Filed 1/31/22  Dunmore v. Dunmore CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| STEVEN G. DUNMORE, | C089854 |
| Plaintiff and Appellant, | (Super. Ct. No. S-CV-0026453) |
| v. | |
| SIDNEY D. DUNMORE et al., | |
| Defendants and Respondents. | |

Steven G. Dunmore, assignee of all legal and equitable claims belonging to his parents, George and Ruth Dunmore, now deceased, and trustee of the Dunmore Family Trust, sued his nephews, Sidney D. Dunmore and Jeremy A. Dunmore, and their real estate development companies, for various forms of fraud, financial elder abuse, breach of contract, and other related causes of action arising out of an alleged fraudulent scheme in which the defendant Dunmores forged the signatures of their grandparents on numerous loan agreements and other financial documents in order to obtain financing for numerous real estate development projects, exposing their grandparents and the Dunmore

1

Family Trust to over $100 million in civil liability when the real estate market collapsed and the defendant Dunmores defaulted on the loan agreements.

The case was tried before the court, sitting without a jury.[1] The trial court ruled in plaintiff's favor on his breach of contract cause of action and in favor of the defendant Dunmores on all remaining causes of action. Judgment in the sum total of $13,521,232.24 was thereafter entered in plaintiff's favor.

On appeal, plaintiff contends the trial court prejudicially abused its discretion by excluding certain out-of-court statements made by Ruth Dunmore, in which she stated that she did not authorize anyone to sign her name on her behalf and to her knowledge neither did her husband. Plaintiff argues these statements were admissible hearsay because they fell within the former testimony exception to the hearsay rule and their exclusion prejudiced his fraud and elder abuse causes of action. We disagree and affirm.

BACKGROUND

The nature of the contention raised in this appeal does not require a detailed recitation of the evidence adduced at trial. It will suffice to note that plaintiff's expert in signature authentication, David Moore, testified to examining over 100 promissory notes, loan guarantees, and other financial instruments purporting to contain the signatures of George and/or Ruth Dunmore. With respect to 126 such documents, Moore definitively concluded that only one signature purporting to be that of George Dunmore was a genuine signature while the others were signed by someone else "try[ing] to mimic or simulate his signature." None of the signatures purporting to be that of Ruth Dunmore were genuine signatures. With respect to two additional documents, Moore concluded the signatures for George and Ruth Dunmore were "very probably not genuine."

---

[1]    Plaintiff represented himself at trial. Additional defendants named in plaintiff's operative complaint were voluntarily dismissed prior to trial.

2

Moore's testimony in this regard was not challenged at trial. Instead, in a declaration submitted in support of a summary judgment motion, which was admitted into evidence at trial at plaintiff's request, Sidney Dunmore stated that he frequently brought a stack of documents to his grandparents' home in order to have them sign the various promissory notes and loan agreements. He claimed that "on at least one occasion" he signed their names to certain documents at "their express direction and permission" and denied ever signing any documents for them without such permission.

In an attempt to rebut this claim of authorization to sign on George and Ruth Dunmore's behalf, plaintiff sought to admit two declarations from Ruth Dunmore, in which she stated that she did not authorize anyone to sign her name on her behalf and to her knowledge neither did her husband. As previously mentioned, George and Ruth Dunmore were both deceased at the time of trial. The declarations plaintiff sought to introduce into evidence were filed in two separate underlying matters (*Pacific National Bank v. Dunmore Family Trust, et al.*, Super. Ct. S.F., No. CPF-08-508138 & *Travelers Casualty and Surety Co. v. Natoma Valley Ridge, LLC, et al.*, E.D.Cal., No. 2:08-CV-02715-JAM-JFM)[2] involving two of the banks that loaned money to the defendant Dunmores (underlying bank actions). In addition to seeking payment from the defendant Dunmores and their real estate development company, these banks apparently also sought payment from George and Ruth Dunmore as guarantors of the loans.

---

[2] Plaintiff also sought to admit into evidence printouts of docket filings for these cases "to confirm the dates of the filing and service of the Court Declarations, the parties to the cases, and the date(s) those cases were terminated." The trial court excluded these printouts as not properly authenticated. Plaintiff takes issue with this ruling in a request for judicial notice, arguing "online docket reports such as the ones at issue here are official public records which are properly subject to judicial notice." We agree and grant the request. (Evid. Code, § 452, subd. (d); see, e.g., *People v. Aegis Security Ins. Co.* (2005) 127 Cal.App.4th 569, 574-575.) Plaintiff also requests that we take judicial notice of the definitions of "testimony," "affidavit," and "declaration" set forth in Black's Law Dictionary. We grant that request as well. (Evid. Code, § 451, subd. (e).)

3

The declarations were nearly identical. Ruth Dunmore stated that she had reviewed the documents at issue in the respective lawsuits. Where both her signature and her husband's signature purportedly appeared on the document in question, she declared: "I did not sign that document, and I did not witness my husband signing that document. I did not authorize anyone to sign that document on my behalf, and to my knowledge, my husband did not authorize anyone to sign that document on his behalf." Where only her husband's signature purportedly appeared on the document in question, she declared: "I did not witness my husband signing that document. To my knowledge, he did not authorize anyone to sign that document on his behalf." Ruth Dunmore further declared: "Over the course of being married to George P. Dunmore for more than fifty years, I became familiar with his signature. His signature does not appear on the [documents in question]."

The defendant Dunmores objected to the admission of these declarations on hearsay grounds. With respect to the first declaration, plaintiff argued: "I believe that it's admissible as a business record under . . . Evidence Code [s]ection 1271 and she also states in there which that these were not her signatures and I believe also qualifies as impeachment document under Evidence Code [section] 1202 which the defendants were also a named party to the action." The trial court sustained the objection, specifically concluding the declaration was not being used as a prior inconsistent statement to impeach the declarant's trial testimony, but was rather being used for the truth of the matters asserted in the declaration to rebut the defendants' version of events.

With respect to the second declaration, plaintiff argued: "I believe it's admissible as impeachment evidence, Evidence Code [s]ection 1202. Former testimony, Evidence Code [section] 1291. And a business record, Evidence Code [section] 1271." The trial court sustained this objection as well, "[f]or the reasons previously stated." While "the reasons previously stated" for sustaining the defendant Dunmores' objection to the first declaration did not address the former testimony exception to the hearsay rule (because

4

that exception was not asserted in defense of that declaration's admissibility), the trial court had previously ruled other proffered evidence, i.e., a videotaped statement of Ruth Dunmore, was inadmissible hearsay falling outside the scope of the former testimony exception because the defendants had no opportunity to cross-examine Ruth Dunmore at the time she made the statement. We presume the trial court employed the same reasoning in sustaining the defendants' objection to the second declaration.

The trial court ruled in plaintiff's favor on his breach of contract cause of action and in favor of the defendant Dunmores on all remaining causes of action. Because plaintiff is seeking reversal of the judgment only as to the first, second, and fourth causes of action, we limit our summary of the trial court's statement of decision to those causes of action. As previously indicated, plaintiff's first and second causes of action for fraud were based on allegations that the defendant Dunmores forged their grandparents' signatures on the various loan documents. The trial court noted plaintiff supported this theory with Moore's testimony, described above, and also noted that Sidney Dunmore admitted to signing his grandparents' names on certain documents, but claimed he was authorized to do so. The trial court concluded plaintiff did not carry his burden of proving fraud because "[n]o evidence admitted at trial directly contradicts the testimony of Sidney D. Dunmore that he was verbally authorized to sign documents on behalf of the Senior Dunmores."

The trial court ruled against plaintiff on his fourth cause of action for financial elder abuse for the same reason, explaining: "As noted above, the court finds that plaintiff has failed to satisfy his evidentiary burden of establishing that defendants are liable for taking property of the Senior Dunmores by fraud." Finally, the trial court also rejected plaintiff's alternative argument that the defendant Dunmores were liable for financial elder abuse based on exercising undue influence over their grandparents.

5

DISCUSSION

Plaintiff contends the trial court prejudicially abused its discretion by excluding the declarations described above, arguing they fell within the former testimony exception to the hearsay rule and their exclusion prejudiced his fraud and elder abuse causes of action because they supplied the only evidence rebutting Sidney Dunmore's assertion that he had verbal authorization to sign the various loan documents on his grandparents' behalf.  We disagree.

As our formulation of plaintiff's contention suggests, the standard of review is abuse of discretion.  (*Osborne v. Todd Farm Service* (2016) 247 Cal.App.4th 43, 50-51 [abuse of discretion standard of review generally applies to hearsay determinations]; *Cameron v. Quong* (1917) 175 Cal. 377, 384 [applying abuse of discretion standard to trial court's admission of hearsay under former testimony exception].)

Declarations are ordinarily not admissible as evidence at trial because they are hearsay.  (*Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 541.)  There are, however, many exceptions to the hearsay rule.  One such exception is contained in Evidence Code section 1291.[3]  This provision allows for the admission of "former testimony" where, as relevant here, "the declarant is unavailable as a witness" and "[t]he party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing."  (§ 1291, subd. (a).)

The defendant Dunmores concede that Ruth Dunmore, deceased at the time of trial, was unavailable as a witness.  They argue her declarations in the underlying bank actions do not qualify as "former testimony" at all, and further argue they had no

---

**3**    Undesignated statutory references are to the Evidence Code.

6

opportunity to cross-examine her in those underlying actions with an interest and motive similar to that which they have in this case. We ultimately conclude the latter argument has merit.

Section 1290 defines " 'former testimony' " to mean "testimony given under oath in: [¶] (a) Another action or in a former hearing or trial of the same action; [¶] (b) A proceeding to determine a controversy conducted by or under the supervision of an agency that has the power to determine such a controversy and is an agency of the United States or a public entity in the United States; [¶] (c) A deposition taken in compliance with law in another action; or [¶] (d) An arbitration proceeding if the evidence of such former testimony is a verbatim transcript thereof."

Plaintiff argues the declarations in the underlying bank actions are "former testimony" because they were made under penalty of perjury, Black's Law Dictionary defines " 'testimony' " to include evidence given under oath in " 'an affidavit or deposition,' " and "a declaration under penalty of perjury is the functional equivalent of an affidavit, with the same force and effect as an affidavit." (Boldface & underscoring omitted.) The only case law plaintiff cites in support of this argument, aside from cases holding that we may consult the dictionary for the meanings of words, are confrontation clause decisions holding that the affidavits at issue therein were testimonial, i.e., the functional equivalent of in-court testimony. (See *Melendez-Diaz v. Massachusetts* (2009) 557 U.S. 305, 310-311; *United States v. Bustamante* (9th Cir. 2012) 687 F.3d 1190, 1194.) While these cases do not conclusively resolve the meaning of "former testimony" as that term is used in section 1290, we note that in construing the confrontation clause, the high court has looked to the dictionary definition of " '[t]estimony,' " defining the word to mean " '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.' " (*Crawford v. Washington* (2004) 541 U.S. 36, 51.) A declaration under penalty of perjury would seem to qualify under this general definition of "testimony."

7

We also note that Code of Civil Procedure section 98, applicable in limited civil cases, allows for the presentation of "prepared *testimony* of [relevant] witnesses in the form of affidavits *or declarations under penalty of perjury*" in lieu of presenting "direct testimony." (Italics added.) Thus, our Legislature has described such declarations as "testimony," at least in the context of limited civil cases. (Code Civ. Proc., § 98.)

We need not, however, determine whether a declaration under penalty of perjury submitted in another action amounts to "former testimony" within the meaning of section 1290 because we conclude the defendant Dunmores had no opportunity to cross-examine Ruth Dunmore in the underlying bank actions with an interest and motive similar to that which they have in this case.

"The essence of the hearsay rule is a requirement that testimonial assertions shall be subjected to the test of cross-examination. [Citation.] The basic theory is that the many possible deficiencies, suppressions, sources of error and untrustworthiness, which lie underneath the bare untested assertion of a witness, may be best brought to light and exposed by the test of cross-examination." (*Buchanan v. Nye* (1954) 128 Cal.App.2d 582, 585.) In accordance with this requirement, section 1291 requires, as a condition of admissibility, that "[t]he party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing." (§ 1291, subd. (a)(2).)

Here, the defendant Dunmores were parties in the underlying bank actions, and the question of whether or not Ruth and George Dunmore signed the loan documents or authorized anyone to do so on their behalf was certainly at issue. However, Ruth was obviously not subject to cross-examination in her own declaration. Such a declaration provides prepared testimony akin to a direct examination. (See *Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1347.) In the context of limited civil cases, where declarations may be presented in lieu of live testimony, the right of cross-examination is preserved by

8

requiring the party seeking to present the declaration at trial to have served a copy of the declaration "on the party against whom it is offered at least 30 days prior to the trial, together with a current address of the affiant that is within 150 miles of the place of trial, and the affiant is available for service of process at that place for a reasonable period of time, during the 20 days immediately prior to trial." (Code Civ. Proc., § 98, subd. (a).) This provides the party against whom the declaration is offered with an opportunity to cross-examine the witness either by deposing the witness or requiring the witness's appearance at trial. (See *Target National Bank v. Rocha* (2013) 216 Cal.App.4th Supp. 1, 7.)

Similarly, plaintiff argues the defendant Dunmores "had the opportunity to effectively cross-examine Ruth [Dunmore] about [her declarations in the underlying bank actions] by taking her depositions in [those actions]." But in the limited civil case context, the party against whom the declaration is offered knows that declaration will be used against it at trial *in that action*. The motive to cross-examine is undeniable. In contrast, the declarations offered in this case were not offered against the defendant Dunmores in the underlying bank actions. Ruth Dunmore and the defendant Dunmores were each defendants in those actions. Nor were the declarations offered as substantive evidence at trial in those actions, such that the defendant Dunmores would have been placed on notice that they needed to depose their grandmother in order to cross-examine her concerning the statements she made in the declarations.

We conclude plaintiff has not carried his burden of showing the defendant Dunmores had an opportunity to cross-examine Ruth Dunmore in the underlying bank actions with an interest and motive similar to that which they now possess. (See, e.g., *Byars v. SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th 1134, 1150 [upholding the trial court's exclusion of deposition testimony of the defendant's expert witness in a previous action, holding the plaintiff did not carry his burden of showing a similar motive for cross-examination existed in the two matters].)

9

## DISPOSITION

The judgment is affirmed.  Defendants are entitled to costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)

/s/
HOCH, J.

We concur:

/s/
RAYE, P. J.

/s/
BLEASE, J.

10